Madden, Judge,
delivered the opinion of the court:
Plaintiff sues, under the Act of June 25, 1938, 52 Stat. 1197, to recover for increased costs incurred as a result of the enactment of the National Industrial Recovery Act. Plaintiff, on December 19,1932, contracted with the Government to construct Lock No. 5 on the Mississippi River. Work was begun about April 21, 1933, and completed about March 7, 1934. The S. M. Siesel Company was associated with plaintiff in the performance of the contract, doing a part of the work and sharing the costs, and having a right to share in the profits, if any.
The National Industrial Recovery Act became effective on June 16, 1933, and the President’s Reemployment Agreement was promulgated on July 27, 1933. Plaintiff was paying 35 cents per hour for common labor and 50 cents for carpenter work. By its contract it had agreed to limit the workweek of its employees, with some exceptions not pertinent here, to thirty hours. In fact the carpenters and common laborers worked only twenty-eight hours per week, because it was more practicable to schedule twenty-eight than thirty hours. The weekly pay checks were consequently small, and the men were dissatisfied and took other better paying jobs if they could get them, creating an unusually large turnover in the force, with resulting loss of efficiency.
Plaintiff’s vice president visited the job early in August, 1933. Plaintiff’s supervisors at the job discussed the dissatisfaction and large turnover and inefficiency with him and recommended increases in the wages of carpenters and common laborers. Neither the workmen in their complaints to the supervisors, nor the supervisors in their discussion with the vice president referred to the Recovery Act as a reason for increasing wages. When the vice president returned to the home office, the officials there decided to raise the wages of carpenters to 60 cents. A raise for the common laborers was also discussed, but was not decided upon, plaintiff’s officials thinking that the common labor was so inefficient, and so inefficiently managed that it wasn’t worth even the 35 cents per hour it was getting.
*584 The increase to the carpenters was put into effect on August 16, 1933. On August 19, the Government’s district engineer wrote plaintiff inquiring whether plaintiff had signed the President’s Eeemployment Agreement. Plaintiff replied that it had not, and could not, at the price it had bid for the contract, agree, as paragraph 12 of the Eeemployment Agreement required, to make an adjustment in price to those who had contracted with it to furnish materials at agreed prices. The Eecovery Administration later gave its consent to plaintiff’s signing the Eeemployment Agreement with a reservation under which plaintiff was not obligated to make increases in the prices of its materials, and on September 19, 1933, plaintiff signed the Eeemployment Agreement with that reservation. On or about the same day plaintiff increased the wages of its common laborers from 35 to 40 cents per hour, making the increase retroactive to September 16, the beginning of the current pay-roll period.
We think that the wage increase to the carpenters was not, and the increase to the common laborers was, a result of the enactment of the Recovery Act, within the meaning of the Act of June 25, 1938. At the time the carpenters’ increase was given, there were in operation all the forces which ordinarily produce wage increases. The hourly wages were low, the hours were short, not as a result of the Eecovery Act, other jobs were becoming available, and it was not possible to recruit and keep a force of carpenters for the pay they were getting. Plaintiff had not agreed, pursuant to the Eecovery Act, to raise wages, and after this raise was given, plaintiff wrote that it could not sign the Eeemployment Agreement as it was then written, and it did not sign it until a month later, when it had obtained consent to an important modification. In these circumstances, we think that the existence of the Eecovery Act was not a factor in producing the raise, in the sense required by the Act of June 25, 1938. See Dravo Corporation v. United States, 93 C. Cls. 734, 758.
The raise to the common laborers was, we think, the result of the Recovery Act. When, in August, plaintiff’s supervisors recommended the raise, and gave their reasons for it, viz, that it would produce a more efficient and economical *585 job, plaintiff’s executives were not persuaded, and did not give the raise. When, in September, plaintiff signed the Eeemployment Agreement under which it was obligated to give the raise, it immediately did so. One of its principal motives for signing the Eeemployment Agreement may have been to make itself eligible to bid on future Government work. If so, that is no obstacle to its recovery here. If the wage raise was the result of the Eecovery Act, we are not interested in what induced plaintiff’s adherence to the Eecovery Act.
Plaintiff is entitled to recover $8,522.81. It is so ordered.
Whitaker, Judge; Littletoh, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case..